THE UNITED STATES VINEGAR COMPANY, PLAINTIFF,
v. JOHN SCHLEGEL, DEFENDANT.

*Action by a corporation to recover a subscription to its capital stock — defense, that the purpose of the incorporation was illegal — forfeiture of franchises by a foreign corporation.*

In an action brought by a corporation, organized for a legal purpose, to recover the amount of a subscription to its capital stock, it is not competent for a subscriber to the stock to show, by way of defense, that it was orally agreed between the promotors that it was to be organized for another, a different and an illegal purpose, and thus relieve himself from his contract and agreement to pay his subscription.

Where there is no vice in the organization of a corporation of another State, the question of its having forfeited its franchises, because of the violation of the laws of the State in which it was organized, is one for the authorities of that State to determine, and cannot be disposed of in an action in the State of New York brought to enforce a stockholder's liability.

MOTION by the defendant, John Schlegel, for a new trial on exceptions ordered to be heard in the first instance at General Term, after a trial at the New York Circuit, on the 20th day of November, 1891, where a verdict was rendered in favor of the plaintiff for $2,119.50, and the exceptions were ordered to be heard at the General Term in the first instance.

*Ten Eyck & Remington*, for the plaintiff.

*Benno Loewy*, for the defendant.

PATTERSON, J. :

This action is brought to enforce against a subscriber to shares of the capital stock of the plaintiff, an unpaid balance of his subscription. The complaint sets forth that the plaintiff is a corporation, duly incorporated under the laws of the State of Illinois, to buy, sell, deal in and handle vinegar; and that in contemplation of its incorporation the defendant and others subscribed to its capital stock and agreed to pay the amounts of their several subscriptions, and that the defendant, at the time of his subscription, paid a certain sum on account thereof. It is further alleged in the complaint that, since the incorporation of the plaintiff, it has incurred debts to

various persons, and has no assets, except such as consist of unpaid subscriptions to its capital stock. The answer of the defendant puts in issue the due incorporation of the plaintiff. That may at once be disposed of by saying that such incorporation was sufficiently proven by the documentary evidence appearing in the record before us. The answer contains affirmative defenses which may be summed up as follows, viz. : That the plaintiff corporation was formed solely for the purpose of controlling and limiting the production of vinegar throughout the United States, and that it was intended to be a combination of all vinegar manufacturers and dealers to control and enhance the price of vinegar in the United States, and that the promoters of the plaintiff and its officers represented to all subscribers, including the defendant, that such was the purpose of the projected and completed corporation ; that the defendant's subscription was based on such representations ; that the plaintiff attempted to carry out that purpose after its incorporation and did, to some extent, carry it out by compelling all its shareholders or members to sign agreements fixing the prices at which they should sell vinegar, and also limiting the amount of the product of each manufacturer who should become a shareholder in the corporation, and that, from time to time, prices were raised in such a way as to prevent competition by those who were not stockholders or members of the plaintiff corporation by forbidding its shareholders to sell to those who were not connected with the plaintiff ; that if the plaintiff was incorporated for legitimate business purposes it was without the authority, consent or knowledge of the defendant, and with the intent to impose upon and deceive the authorities of the State of Illinois, and for the purpose of evading the statutes of that State ; that all the moneys expended and contracts made were in furtherance of unlawful schemes and conspiracies, and that the defendant was induced to subscribe to shares of the plaintiff's stock by reason of false representations made to him of the object of the corporation and of the persons or corporations who were to become interested in it as shareholders.

So much has recently been written on the subject of monopolies and so-called commercial trusts that in the disposition of this case we have felt constrained to confine ourselves to the decision of the questions actually before us, without attempting to add to the vast

mass of judicial literature, more or less instructive, existing on those subjects. The case, as we find it on the record, is that various persons interested or engaged in the business of manufacturing and selling vinegar conceived a scheme for uniting in one corporation certain persons and corporations engaged in the same business. That is stating the case as broadly as the defendant claims. A prospectus was issued and manufacturers and dealers were invited to become members of that corporation. In that prospectus it was stated that "the purpose of the company shall be to buy and sell vinegar with a view of regulating the production, lessening the cost of selling, of equalizing the distribution of the surplus in accordance with the demands of the various sections of the country — thereby limiting the cost of reaching the consumer and benefiting both the producer and consumer." That was the expressed purpose of the intended corporation. The details of the method by which that purpose was to be effectuated are somewhat intricate, but they may be stated briefly as follows, viz.: Each vinegar manufacturer was to be at liberty to subscribe to capital stock in the same proportion that his product bore to the aggregate product of all vinegar manufacturers who should become shareholders in the plaintiff corporation ; after all manufacturers had been afforded an opportunity to take stock the balance untaken might be subscribed for by any person. It was then stated in the prospectus that the plaintiff corporation should agree to buy from each manufacturer during the year ending December 1, 1887, *his entire* product of vinegar, provided, however, that such product should not exceed the amount manufactured by him during the preceding year; but each manufacturer was also to stipulate that during the term of an agreement of the character mentioned he would not increase his capacity to produce over the amount of his production for the year 1886 nor manufacture more than the plaintiff should contract for with him, and then the plaintiff would appoint such manufacturer an agent to sell under certain terms and prices to be regulated.

It was upon this prospectus and certain representations and statements of promoter of the company that the defendant says he was induced to subscribe to the shares of the plaintiff. There are certain dates which should be kept in mind. Mr. Schlegel swears the prospectus above mentioned was read at a meeting of vinegar manu-

facturers held at the Linwood House, on April 4, 1887. We will assume, therefore, that he made his subscription to stock at or about that date. But it appears in evidence that on the 7th day of March, 1887, application was made to the secretary of State of the State of Illinois, for a charter for the plaintiff; that a license was issued to commissioners and that on the 16th day of March, 1887, the commissioners reported to the secretary of State their purpose to form a corporation, the object of which "is to buy, sell, deal in and handle vinegar." Subsequently, and on the 2d day of May, 1887, the plaintiff was incorporated, and, in express words, for that purpose and no other. It was intermediate those dates that the defendant made his subscription.

There is nothing in the record to show what the law of the State of Illinois is as to the relations of a shareholder to a corporation when he is sued on a subscription to stock, but it is clear that under the law of this State the defendant cannot rely upon a mere prospectus or on the representations of promoters to defeat his liability unless such prospectus or representations have, after the incorporation, been adopted by the corporation and the business conducted in accordance therewith. (*Munson* v. *S. G. and C. R. R. Co.*, 103 N. Y., 58.) The promoters of a corporation are not the corporation. They cannot contract for or bind it in advance. To quote the language of Judge REDFIELD (1 Red. on Railways [6th ed.], 9) " the promoters are in no sense identical with the corporation, nor do they represent it in any relation of agency." This defendant could not rely upon the prospectus or on representations of promoters, for, at the very time those representations are said to have been made, there was a pending application in Illinois for the incorporation of a company, the business objects of which were perfectly legitimate, and it was to shares in that company that he subscribed. But we may go a step further in this case and test the liability of the defendant by the strictest rules applying to monopolies or combinations in restraint of trade or organizations to prevent competition. Taking the prospectus and the certificate of organization or charter of the plaintiff together, we find no such unlawful intent or purpose in them as would prevent the enforcement of the defendant's liability on his subscription. The prospectus shadows forth a lawful enterprise, not one to create a monopoly, but one to protect shareholders against

ruinous competition. That is not only the professed, but it may be said to be the apparent purpose. The corporation was organized for a legitimate business. That appears from the terms of the charter. If afterwards unlawful contracts were made and the corporation exceeded or abused its chartered powers or privileges it became a subject for the intervention of the State to revoke that charter, or for suit by a shareholder to enjoin acts of the corporation *ultra vires*. We think the direction of a verdict was right, and that the exceptions must be overruled and judgment entered for the plaintiff, with costs.

O'BRIEN, J., concurred.

VAN BRUNT, P. J.:

There being no vice in the organization of the company, and it having been for legal purposes, the question of its having forfeited its franchises because of the violation of the laws of the State of organization is one for the authorities of that State to determine, and cannot be disposed of in an action in this State brought to enforce a stockholder's liability. I, therefore, concur.

Exceptions overruled and judgment ordered for the plaintiff, with costs.